IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GAIL P. BATES                                                              PLAINTIFF

vs.                          NO. 4:07CV00781 BSM

MORRISON MANAGEMENT SPECIALISTS, INC..                    DEFENDANT

## ORDER

Plaintiff filed this action alleging that defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Defendant has filed a motion for summary judgment. Plaintiff has responded and defendant has replied. For the reasons set forth below, the motion is granted.

### I. FACTUAL BACKGROUND[1]

Plaintiff, an African-American female, began working for defendant on August 28, 2006, as a hospitality associate at St. Vincent Hospital in Little Rock, Arkansas. As a hospitality associate, plaintiff was responsible for providing patients with menus for their meals and ensuring that they received their requested meals. Plaintiff would deliver the meals to the patients and pick up the trays after the patients had finished their meal.

About two or three months prior to beginning her work with defendant, plaintiff injured her left shoulder while she was at the office of her primary care physician, Dr. Priyantha Wijewardane. Plaintiff states that she was bending down to pick up her purse, and when she

---

[1]The facts are taken from defendant's statement of facts to which plaintiff agrees. Where the facts are in dispute, the court has referenced the relevant document.

stood up, she hit the air conditioner, causing her injury.  Because of the injury from that incident, plaintiff began seeing Dr. Robin Perry about the pain in her left shoulder.  Dr. Perry prescribed medication for the pain.

Plaintiff states that on September 13, 2006, about two weeks after beginning her employment with defendant, she was pushing a meal tray cart out of the elevator and had to step in front of the cart to stop it from rolling.  Plaintiff states that the cart struck her and that she injured her left shoulder.  Plaintiff returned to see Dr. Perry on September 15, 2006, regarding her shoulder pain.

Dr. Perry referred plaintiff to Dr. Ethan Schock, an orthopedist for her shoulder pain. Dr. Schock first saw plaintiff on September 29, 2006. On October 27, 2006, Dr. Schock recommended that plaintiff have surgery to repair her rotator cuff.  In his report to Dr. Perry recommending surgery, Dr. Schock noted:

> There is some question about this being a work related injury.  She describes an incident in which she was pushing a heavy cart and felt something give [sic] her shoulder with progressive symptoms ensuing.  This could be consistent with this process.  She will plan on discussing this with her employer, and should any further documentation be needed, we can certainly help with this.

Following her surgery, plaintiff returned to work on December 11, 2006.  Defendant offered plaintiff a job sitting and answering the phone without any lifting because she was restricted from performing her regular job duties.  Plaintiff, however, said that she could not do the job because her arm was causing pain and that she needed to go home.

Plaintiff's supervisor, Brittnee Nelson, asked plaintiff to get a note from her doctor

explaining her restrictions so that she could help plaintiff return to work.  On December 13, 2006, plaintiff provided Nelson with a doctor's note stating that she could not resume work until she returned to the doctor on January 11, 2007.

On January 11th, plaintiff's doctor told plaintiff that she could not return to work until after the next appointment on February 22, 2007.  At the February 22nd visit, plaintiff told her physician that she had re-injured her arm when going down stairs while she was out of town. She had increased pain which prolonged her recovery.  Plaintiff was finally released by her doctors to return to work on May 5, 2007.

Despite plaintiff's release to return to work, she remained unable to perform her job. On May 4, 2007 Nila Ray, the Human Resources Associate at St. Vincent Hospital, terminated plaintiff effective January 2, 2007, for failing to return to work.

Plaintiff claims that she reported her work related injury to her supervisor on September 13, 2006.  (Plaintiff's depo. p. 82).  Defendant counters that it only learned on January 4, 2007, of plaintiff's injury .  At that time, Ray, upon learning that plaintiff might be claiming a work related injury, filed a claim with plaintiff's workers' compensation carrier. (Defendant's Ex. F).

Following an investigation into plaintiff's claim, the insurance carrier denied plaintiff workers' compensation benefits because she untimely reported the alleged injury, and failed to show that she was injured during the course and scope of her employment. Therefore she did not have a compensable injury.

Plaintiff appealed the denial to an Administrative Law Judge (ALJ) of the Arkansas Workers' Compensation Commission.  The ALJ found that plaintiff failed to prove that she sustained an injury arising out of and during the course of her employment and dismissed plaintiff's claim.  Plaintiff appealed the decision of the ALJ to the full Arkansas Workers' Compensation Commission, which on January 2, 2008, affirmed and adopted the decision of the ALJ.

Plaintiff filed an EEOC charge on February 2, 2007, alleging that defendant discriminated against her on the basis of her race because it waited until January 4, 2007 to report plaintiff's injury to the worker's compensation carrier.  The EEOC issued notice of right to sue on July 30, 2007.  Plaintiff filed a *pro se* complaint on August 28, 2007, alleging discrimination on the bases of race, color and sex.  On March 4, 2008, the court appointed counsel for plaintiff.  Defendant filed its motion for summary judgment on September 11, 2008 (Doc. No. 26), plaintiff filed her response on October 7, 2008 (Doc. No. 29), and defendant filed its reply on October 17, 2008 (Doc No. 33).

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law."  *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

The moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "The  nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citation and internal quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). Plaintiff as the non-movant "must demonstrate a genuine issue of material fact, that is a dispute that might affect the outcome of the suit under the governing law, so that a reasonable jury could return a verdict for the nonmoving party." *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (citation and internal quotation marks omitted).

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's*

*Club*, 487 F.3d 641, 643 (8th Cir. 2007).  It does not weigh the evidence or make credibility determinations.  *Jenkins v. Winter,* 540 F.3d 742, 750 (8th Cir. 2008).  However, the plain language of Rule 56 mandates the entry of summary judgment against a non-moving party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

The Eighth Circuit has stated that "[s]ummary judgment should seldom be granted in the context of employment discrimination cases because of their being inherently fact based." *Mayer v. Nextel West Corp.,* 318 F.3d 803, 806 (8th Cir. 2003) (citation omitted).  However, it has also noted that there is no "discrimination case exception" to the application of Rule 56. *Pope v. ESA Servs.*, 406 F.3d 1001, 1006 (8th Cir. 2005).

## III.  DISCUSSION

A. Sex Discrimination Claim

Plaintiff's sex discrimination claim must be dismissed because plaintiff failed to exhaust her administrative remedies with regard to that claim.  Plaintiff only raised race discrimination in her EEOC charge; nowhere did she allege that defendant discriminated against her on the basis of her sex.

Title VII establishes an administrative procedure which a plaintiff  must follow before filing a lawsuit in federal court.  *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).  Thus, a plaintiff must first bring an administrative change of discrimination

before the EEOC to provide it "the first opportunity to investigate discriminatory practices and enable[] it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Id.*   Plaintiff may then "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998).   "The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000).

Plaintiff's sex discrimination claim is not specifically stated in, grows out of, or is like or reasonably related to the substance of her allegations in her EEOC charge, and is therefore dismissed.

## B.  Race Discrimination

At the summary judgment stage, the issue in a discrimination case is "whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action." *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1127 (8th Cir. 2008) (citation and internal quotation marks omitted).  A plaintiff raising a claim of discrimination may survive a motion for summary judgment either by proof of direct evidence of discrimination or by creating an inference of discrimination under the burden-shifting test, established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973), and then rebutting any proffered nondiscriminatory reason for the employment decision

with sufficient evidence of pretext. *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008).

Plaintiff states that on or about September 16, 2006, Jackie Turner, another African-American employee, told plaintiff that she "overheard a person named Terry, who was white and a supervisor employed by defendant, refer to the black employees as 'a bunch of monkeys.'" (Plaintiff's Ex. 2). Although this statement, if true, is disgusting, it does not constitute direct evidence of discrimination. "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (citation and internal quotation marks omitted).

Indeed, there is no indication who Terry is, when the statement was made, and whether Terry had any role in the decisions involving plaintiff. At the most, the statement amounts to a "stray remark." "Stray remarks made in the workplace are not sufficient to establish a claim of discrimination." *Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999) (racially derogatory comment which was not sufficiently related to adverse employment action was stray remark). Direct evidence "does not extend to stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decision process itself." *Gross v. FBL Fin. Servs., Inc.*, 526 F.3d 356, 359 (8th Cir. 2008) (citation and internal quotation marks omitted).

As plaintiff has not presented any direct evidence of race discrimination, the court

applies the *McDonnell Douglas* framework. "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a prima facie case of discrimination." *Pope,* 406 F.3d at 1006.  Once plaintiff establishes her prima facie case, the burden of production shifts to defendant to show that it had a legitimate, nondiscriminatory reason for its actions.   If defendant can articulate a legitimate, nondiscriminatory reason, the burden returns to plaintiff to prove that the proffered reason is pretextual.  *Beaden v. Int'l Paper Co.*, 529 F.3d 828, 831-32 (8th  Cir. 2008).

To meet her burden of establishing  prima facie case of discrimination under Title VII, plaintiff must show that she (1) is a member of a protected group, (2) was meeting the legitimate expectations of her employer, and (3) suffered an adverse employment action, (4) under circumstances permitting an inference of discrimination.  *Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 926 (8th Cir. 2007).

1.  Workers' Compensation Claim

Plaintiff  alleges that defendant discriminated against her on the basis of her race by failing to timely report her workers' compensation claim to its carrier.  Defendant claims that plaintiff cannot establish a prima facie case of discrimination with respect to this claim. The court agrees.

There is a dispute in the evidence as to when plaintiff informed defendant of her injury. Plaintiff claims that she reported her injury to her supervisor on September 13, 2006, which was immediately after she was injured. (Plaintiff's depo. p. 82)  Defendant counters that it did

not learn of the on-the-job injury until January 4, 2007.  (Defendant's Ex F)

The record before the court reveals that plaintiff did not tell her doctor that she was injured in a work related accident when she first sought treatment from him on September 15, 2006. (Defendant's Ex. B).  According to Dr. Perry's Patient Progress Sheet, dated September 15, 2006, plaintiff complained of left side and left arm pain, which had been hurting for two or three weeks.  (Defendant's Ex. B).[2]  Furthermore, plaintiff later asked Dr. Perry to change her records to reflect that plaintiff had reporter a work-related injury in September, but Dr. Perry refused to change plaintiff's records and told her that her records did not contain that information. (Defendant's Ex. E).

Dr. Perry referred plaintiff to Dr. Schock, who first treated plaintiff on September 26, 2006.  According to his notes of the September 26th visit, plaintiff had been experiencing left shoulder pain for several months.  (Defendant's Ex. C).  Dr. Schock first mentioned the possibility of a work-related injury in his notes of the October 27, 2006 office visit. (Defendant's Ex. D).

The dispute regarding when plaintiff actually reported her injury is interesting.  This point, however, is not the most important factor in the court's decision.  What is more important is that, even if it was undisputed that plaintiff reported her injury in September, 2006, she cannot establish that defendant's action was based on her race.  This is the case,

---

[2]The typewritten word "weeks" is scratched through and replaced with a handwritten "days."  Plaintiff admits that she made the changes.  (Plaintiff's depo. p. 61).

because she cannot point to any similarly situated employee, outside of plaintiff's protected group, who was treated more favorably. (Plaintiff's depo. p. 78).  According to Ray, twenty-three out of thirty employees who applied for and received workers' compensation benefits during their employment with defendant were African-American.  (Defendant's Ex.  F)

More importantly, plaintiff cannot establish that defendant took any adverse action against her.  "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Buboltz v. Residential Advantages, Inc.*, 523 F. 3d 864, 868 (8th Cir. 2008).  Defendant had no role in the decision to deny plaintiff workers' compensation benefits.  Initially the workers' compensation carrier denied plaintiff benefits.  Plaintiff appealed the decision and ultimately plaintiff was denied benefits because the Arkansas Workers' Compensation Commission found that she was not injured in the course and scope of her employment.  (Defendant's Ex. 1).  Because defendant was not the decision maker with respect to plaintiff's coverage, it cannot be responsible for the alleged adverse action.

Defendant is therefore entitled to summary judgment on this claim.

2. Termination

Plaintiff also contends that she was terminated because of her race.  Defendant argues that plaintiff cannot establish a prima facie case with regard to this claim.  The court agrees.

The evidence establishes that plaintiff was not able to meet the expectations of her position as a hospitality associate.  She admitted in her deposition that she could not perform

her job because of the lifting.  (Plaintiff's depo. p. 73).  She was not even able to do the job of answering the phone while seated.  (Plaintiff's depo. p. 72).

Furthermore, there is no evidence from which an inference of discrimination can be drawn.  Plaintiff admitted that the majority of employees who worked as hospitality associates were African-American. From December 11, 2006 through June, 2007, 17 of the 18 employees employed in plaintiff's position were African-American.  (Defendant's Ex. F).

Defendant is therefore entitled to summary judgment on this claim.

### IV.  CONCLUSION

Accordingly, defendant's motion for summary judgment (doc. no. 26) is granted. The case is hereby dismissed with prejudice.

IT SO ORDERED this 22nd day of October, 2008.

_____
UNITED STATES DISTRICT JUDGE